# SAURER v. GROEBLI.

PATENTS; INTERFERENCE; DILIGENCE.

1. Failure by the senior party to an interference, for five months after making disclosure to make drawings for the use of his attorney in preparing an application, does not show such want of diligence as to entitle the junior party to an award of priority, where the invention is of an intricate nature and minute detail is of its essence, and where during that time he made tentative drawings, had no one who could by any possibility assist him in the preparation and development of the invention, and only turned over his papers to his patent attorney when he considered his idea definite enough to form the basis for an application for a patent, and the completed drawings delivered to his attorney show that much time was necessarily spent in perfecting the details of the invention and that such consumption of time was fruitful of results.

2. While the mental attitude of a party to an interference will not generally be considered on the question of diligence, there may be circumstances which will constitute an exception to the rule.

No. 1033. Patent Appeals. Submitted May 10, 1916. Decided May 22, 1916.

HEARING on an appeal from decision of the Commissioner of Patents in an interference proceeding.          *Affirmed.*

The facts are stated in the opinion.

*Mr. Henry Orth, Jr., Mr. W. B. Greeley* and *Mr. W. A. Redding* for the appellant.

*Mr. Paul Finckel* and *Mr. Andrew Wilson* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This appeal is from a decision of the Patent Office in an interference proceeding awarding priority of invention to Joseph A. Groebli, the senior party.

The invention is for improved mechanism for punching jacquard cards, used in automatic embroidering machines, and is defined in eleven counts, which are sufficiently illustrated by count 1, reading as follows:

"1. In a punching machine, measuring mechanism, adapted to measure distances on a pattern, perforating mechanism for perforating a card, a plurality of selecting devices adapted to control the perforating elements to determine the location of the perforations, said selecting devices being adapted to operate alternately upon the same perforating elements, and intermediate mechanism adapted to transfer the motion of the measuring mechanism alternately to the different selecting devices upon different operations of the machine."

Hippolyt Saurer, a resident of Switzerland, relies for conception, disclosure, and constructive reduction to practice, upon

an application filed by him in Germany on November 17, 1910, his application herein having been filed November 14, 1911. The Examiner of Interferences and the First Assistant Commissioner ruled that this foreign application, containing a single diagramatic view with a brief paragraph of description, does not sufficiently disclose the invention in issue, and therefore awarded priority to Groebli. These tribunals pointed out that in the present application of Saurer he has largely amplified his specification and drawings, and that it required invention thus to work out a result which he may have had in mind when he filed his German application, but which, as they thought, he did not definitely disclose. The Board of Examiners in Chief entertained the view that this German application sufficiently disclosed the invention of the issue, but further found that, although Groebli was first to conceive and disclose it, he was lacking in diligence because five months elapsed between his disclosure and the making of the drawings for the use of his attorney in filing his application.

While we are impressed with the soundness of the view of the Examiner of Interferences and the Assistant Commissioner on the first of the above suggested questions, we think the decision safely may be rested upon the second. Mr. Groebli probably has contributed more to the development of this art than any other inventor, and is very skilled therein, having taken out many patents appertaining thereto. The record demonstrates not only his great ability, but his thoroughness in the matter of detail. It is clearly proved that he conceived and disclosed the invention about February, 1910, when he made what may be termed tentative drawings. In October of the same year, or just prior to the filing of Saurer's application, he made other drawings or sketches, all of which are in evidence. He was a very busy man, and had no one, according to his uncontradicted testimony on this point, "who could by any possibility" assist him in the preparation and development of this invention. While there is no doubt that the sketches made in October constituted a disclosure of the invention, Mr. Groebli testified that he did

not then consider "that the invention was completed;" that he was of the opinion "that certain points would have to be worked out in greater detail and other points might require modifications." He further testified that he had the invention on his mind during the interval between October, 1910, and April, 1911. "Finally, at that time," said the witness, my ideas had become definite enough, and I was able to complete the invention to the point where I considered it sufficient as a basis for a patent application, and without further delay I turned the papers over to my patent solicitor, who attended to the work of preparing the application with proper diligence, so that the application was ready for my signature a few days before July 4, 1911, on which date I sailed for Europe." Counsel for Saurer object that the mental attitude of Groebli ought not to be considered on the question of diligence. They contend that there is no way to meet such evidence. While, generally speaking, their position is sound, we think the circumstances here constitute an exception to the rule. That much progress was made by Mr. Groebli between October and April in working out and perfecting the details of his invention is evidenced by the April drawings, which fully and clearly disclose its every element. Those drawings, therefore, furnish tangible proof that this consumption of time was fruitful of results. We many times have ruled that an inventor is to be commended, rather than criticized, for fully perfecting the details of his invention before filing an application; and where, as here, it clearly appears that the one who first conceived and disclosed the invention has acted in good faith in perfecting it, and consumed no more time for that purpose than reasonably was necessary, the award of priority should go to him. Especially is this true in a case like this, where the invention is of an intricate nature, and minute detail of its very essence.

A review of all the evidence convinces us that Mr. Groebli was reasonably diligent, and we therefore affirm the decision.

*Affirmed.*